IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

  **v.**                               **CRIMINAL NO. 1:23-CR-24**
                                                      **(KLEEH)**

**NATASHA NICOLE NEWBERRY,**

      **Defendant.**

**MEMORANDUM OPINION AND ORDER DENYING MOTION FOR
JUDGMENT OF ACQUITTAL [ECF NOS. 40,41,42]**

Defendant Natasha Nicole Newberry ("Newberry" or "Defendant") made an oral motion for judgment of acquittal [ECF No. 40]; filed Defendant's *Motion for Judgment of Acquittal* [ECF No. 41]; and renewed her oral motion for judgment of acquittal at the conclusion of the bench trial before this Court November 3, 2023 [ECF No. 42]. The Court reserved ruling from the bench on the oral motion for judgment of acquittal and the renewed motion to allow for additional briefing by the parties. The Government subsequently filed *United States' Response in Opposition to Defendant's Motion for Judgment of Acquittal* [ECF No. 51]. The motions for judgment of acquittal are thus fully briefed and ripe for review.

For the reasons discussed herein, Defendant's oral motion for judgment of acquittal [ECF No. 40]; Defendant's *Motion for Judgment of Acquittal* [ECF No. 41]; and Defendant's renewed oral motion for judgment of acquittal [ECF No. 42] are **DENIED.**

## I. BACKGROUND

On May 2, 2023, Newberry was charged via information with one count of attempt to obtain a prohibited object in violation of Title 18, United States Code, Section 1791(a)(2). ECF No. 6. Defendant subsequently requested a bench trial [ECF No. 15] and waived her right to a jury trial [ECF No. 44]. The Court then convened for a half-day bench trial on November 3, 2023. Following the Government's presentation of its case in chief, the Defendant moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. The motion was raised orally [ECF No. 40] and in writing [ECF No. 41]. The Court reserved its ruling on the motions and Defendant renewed her motion for judgment of acquittal at the conclusion of the trial [ECF No. 42].

## II. APPLICABLE LAW

Rule 29 of the Federal Rules of Criminal Procedure provides that "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." A defendant who challenges the sufficiency of the evidence under Rule 29 faces an "imposing burden." United States v. Martin, 523 F.3d 281, 288 (4th Cir. 2008) (citing United States v. Beidler, 110 F.3d 1064, 1067 (4th Cir. 1997)). The Defendant must establish that "the record demonstrates a lack of evidence from which a [trier of fact] could find guilt

2

beyond a reasonable doubt." Id. at 277–78 (citing United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc)). When reviewing the sufficiency of the evidence supporting a criminal conviction, courts are "limited to considering whether there is substantial evidence, taking the view most favorable to the Government, to support it." Beidler, 110 F.3d at 1067 (citation and quotation marks omitted).

"The test for deciding a motion under Rule 29(a) is 'whether there is substantial evidence (direct or circumstantial) which, taken in the light most favorable to the prosecution, would warrant [the trier of fact] finding that the defendant was guilty beyond a reasonable doubt.'" United States v. Pertuset, 160 F. Supp. 3d 926, 928–29 (S.D.W. Va. 2016) (internal quotations omitted). "As the trier of fact in the bench trial, the factual findings of this Court are entitled to the same deference as those given to a jury verdict." United States v. Pugh, No. 1:08-CR-52-1, 2009 WL 10701943, at *1 (N.D.W. Va. Apr. 14, 2009).

The court must uphold the verdict if, when viewed in the light most favorable to the government, there is sufficient evidence from which "any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt." United States v. Wilson, 118 F.3d 228, 234 (4th Cir. 1997). "If a 'rational trier of fact' can find that the essential elements of a charged offense are supported by the evidence, the motion must be denied." United

3

States v. Blankenship, No. 5:14-cr-00244, 2015 WL 8731688, at *1 (S.D.W. Va. Dec. 9, 2015) (quoting United States v. Singh, 518 F.3d 236, 246 (4th Cir.2008)). "If the evidence supports more than one reasonable interpretation, the trier of fact weighs the credibility of evidence and decides which interpretation to believe." United States v. Sellers, No. 1:08-CR-52-1, 2009 WL 10701942, at *1 (N.D.W. Va. Apr. 14, 2009). "This standard of review is the same whether the trial was before a jury or before the court." Pertuset, 160 F. Supp. 3d at 29 (quoting United States v. Witasick, No. 4:07CR00030-001, 2010 WL 1064735, at *1 (W.D.Va. Mar. 22, 2010)).

### III. **RELEVANT FACTS**

On January 4, 2023, defendant Newberry was in custody of the Bureau of Prisons at the Federal Correctional Complex Hazelton ("FCC Hazelton"). On this day, upon reviewing outgoing inmate mail, SIS Technician Zachary Dillow ("Dillow") reviewed an unsealed handwritten letter addressed to Aaron Gillis, 2117 Glenburn Rd., KPT, TN 37660, with a return addressee of "N. Newberry 41210509" — Defendant's first initial, last name, and federal inmate register number. The handwritten letter reads as follows:

> Aaron,
>
> Whats up with ya? I hope all is well your way. As for me same ol' same ol' just a different day. It was really good hearing your voice. I hope you had a great Christmas and a Happy New Year. So I really need to talk to

>you. I want us to go into business together and I know you are very smart and got the bread to get us started. I will never speak on the phones and this the only letter going out. I just need it to happen (1) time a month. I will never say your name none of that. I need strips and K2 spray. The strips I need (20) at a time. 10 in front of the book 10 in back. They go for 500. You make half I make half. You go to the book store and buy a book take it home. Fix it. You get leather back books. In very front is *illegible* is open book you will see where it glued down use knife peel it up. Stick 10 down same in back. Take book back with receipt. Tell them you didn't know it had to be sent from company. Ask them to send it. Your very smart you know how to do it. With the K2 spray you spray all oddpages of book. You get the spray online. It goes for 500 a (10) card. Once a month is all I need. Strips all leather back books. K2 do paperback James Patterson books odd pages. I need help in here. Everyone fades away. Change cashapp every month. When you get a cashapp tell me cashapp person that sent it your *illegible* and name of whoever sent it paid you how much cash was sent. I am clean and clear minded. I just want to make the money and I know we can do this. (1) a month that's it. Don't get greedy is the key. Please lets do this if you not comfortable point me to someone that is. Please. I'm never gonna act like to anyone that have it I'm gonna act like I'm meeting to get it. You know I am a hustler and I got this. I need you please.
>
>    (heart shape) you.
>                    Always,
>                    Natasha(heart shape)

Based upon his eight years of experience working at FCC Hazelton, Dillow testified that the term "strips" in the letter means Suboxone, a Schedule III controlled substance containing Buprenorphine and Naloxone. Additionally, he testified that he

5

knew K2 to be a synthetic drug. Inmates are prohibited from possessing controlled substances in FCC Hazleton and the Warden has never given an inmate permission to possess either K2 or Suboxone within FCC Hazleton — outside of the prison's medically assisted treatment program.

Upon discovery of the letter, Defendant was informed of the situation and placed in administrative detention. FCC Hazleton then undertook an investigation during which SIS Technician William Woody ("Woody") served as the primary case agent. During the investigation, Woody reviewed Defendant's inmate account and discovered that Aaron Gillis sent fifty dollars to Newberry on January 3, 2023. The name and address associated with the payment matched the information used for the letter.

Later, Woody learned that Defendant sent a handwritten letter to the United States District Court's Clerk Office, which was received on March 8, 2023.[1] Upon completing his investigation of the letter, Woody referred the matter to the United States Attorney's Office and started the internal hearing process for Defendant's rule violation.

---

[1] As the factfinder in this matter, the Court notes that it has reviewed both letters to compare the handwritings and finds there is substantial evidence to support the letters were both written and attributed to Defendant. See Fed. R. Evid. 901(b)(3).

## IV. DISCUSSION

The crime of attempting to obtain a prohibited object in violation of 18 U.S.C. § 1791(a)(2) consists of four elements: (1) that the defendant was an inmate at a federal correction, detention, or penal facility; (2) that the defendant attempted to make or obtain a prohibited object; (3) that the defendant did so without the knowledge and consent of the warden or superintendent of the facility; and (4) that the defendant did so knowingly and intentionally. Eric Wm. Ruschky, *Pattern Jury Instruction for Federal Criminal Cases*, District of South Carolina, Title 18 U.S.C § 1791 (a)(2) (2020 Online Edition). Defendant's motion focuses on the second element — whether sending the letter attributed to Newberry qualifies as a substantial step toward bringing contraband into the prison. For the reasons discussed below, taken in the light most favorable to the Government, there is substantial evidence to find that Defendant is guilty beyond a reasonable doubt.

### A. Substantial evidence exists to support that Newberry took a substantial step toward bringing contraband into the prison.

Viewing the evidence in the light most favorable to the Government, Newberry's conduct qualifies as attempt. "An attempt to commit a crime . . . punishes conduct that puts in motion events that would, from the defendant's point of view, result in the commission of a crime but for some intervening circumstance."

7

United States v. Pratt, 351 F.3d 131, 135 (4th Cir. 2003). "For purposes of the crime of attempt, a substantial step is a direct act in a course of conduct planned to culminate in commission of a crime that is strongly corroborative of the defendant's criminal purpose." United States v. Engle, 676 F.3d 405, 423 (4th Cir. 2012).

Importantly, "the direct, substantial act toward the commission of a crime need not be the last possible act before its commission. An attempt comprises any substantial act in a progression of conduct that is meant to culminate in the commission of the crime intended." Pratt, 351 F.3d at 136. "In determining whether a defendant has taken a substantial step, 'the focus is on the actions already taken to complete the underlying crime, not on the acts that remain uncompleted,'" Engle, 676 F.3d at 423 (quoting United States v. Sanchez, 615 F.3d 836, 844 (7th Cir. 2010) (emphasis in original)). Determining whether a defendant's conduct constitutes a substantial step is a fact intensive process. Id.

The Model Penal Code advises that "soliciting an innocent agent to engage in conduct constituting an element of the crime," qualifies as a substantial step. Pratt, 351 F.3d at 136 (quoting Model Penal Code § 5.01(2)). Additionally, "while words and discussions would usually be considered preparations for most crimes, a specific discussion could be so final in nature" as to amount to a substantial step of the crime. Id.; see also United

8

States v. Neal, 78 F.3d 901, 907 (4th Cir. 1996) (finding a discussion leading to an agreement to engage in crack cocaine transactions, along with corroborative evidence, was a substantial step toward the commission of the drug transaction).

Soliciting help to smuggle contraband into a prison has been found to amount to a substantial step. United States v. Raygosa-Esparza, 111 F. App'x 902 (9th Cir. 2004). In Raygosa-Esparza, the Ninth Circuit affirmed a district court's finding that the evidence supported the substantial step element for the crime of attempt when the Defendant sought out another person, offered to pay him in exchange for smuggling a specific variety of drugs into the prison, questioned the individual about his timetable for completing the transaction, and whether the accomplice was still willing to go through with the scheme. Id. at 904. Viewing the evidence in the light most favorable to the government, the Ninth Circuit found that a rational jury could have found Raygosa-Esparza guilty, beyond a reasonable doubt, of attempt to obtain contraband in prison.

Here, the Government has put forth sufficient evidence that Newberry took a substantial step toward bringing contraband into the prison. While Defendant characterizes the subject letter as a "brief, handwritten note", the reality is that the letter contains a substantial amount of information and thoroughly lays out Defendant's plan for smuggling K2 and Suboxone into FCC Hazelton.

9

Like the Defendant in Raygosa-Esparza, Newberry's efforts in soliciting assistance and formulating the smuggling scheme amounts to attempt under Rule 29's relatively lenient standard.

First, Defendant states that the letter will be the only communication she sends to Gillis, indicating that she believed she provided all the necessary information from her perspective to pull off the scheme. Second, Defendant included several details on how the scheme would operate including the frequency of deliveries, the types of contraband to be smuggled into the prison, and the specific size of the orders. Third, Defendant's letter included instructions for both hiding the K2 and Suboxone within certain types of books and described the process for having the books delivered to FCC Hazelton through authorized book retailers. Fourth, Defendant already determined the sales cost for the drugs, the division of profits, and the method for payment. There is further evidence that a means for transmitting payment to Defendant already existed because Gillis previously sent her money through her inmate account. And fifth, Defendant makes her mindset known in the letter; she was "clean and clear minded" and intended to proceed with bringing drugs into FCC Hazelton.

In arguing that the letter does not amount to a substantial step, Defendant claims that the letter is a mere proposal and that she did not know if Gillis would agree to participate in the scheme. However, in addition to the above points, the letter

10

further requests that Gillis point Newberry to someone else if he is not interested. Thus, the Defendant's letter makes clear that she intended to proceed with the scheme, regardless of Gillis's specific assistance. From Defendant's perspective, her role in initiating the scheme was complete and would have been put into motion but for her letter's interception.

Therefore, considering the evidence in the light most favorable to the Government, a judgment of acquittal is not warranted.

## V. CONCLUSION

For the reasons discussed above, Newberry's oral motion for judgment of acquittal [ECF No. 40]; Defendant's *Motion for Judgment of Acquittal* [ECF No. 41]; and Defendant's renewed oral motion for judgment of acquittal [ECF No. 42] are **DENIED**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to counsel of record.

DATED: January 3, 2023

*Tom S Kleeh*
_____
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA