```
          IN THE UNITED STATES DISTRICT COURT
       FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


UNITED STATES OF AMERICA,

          Plaintiff,

     v.                              CRIMINAL NO. 1:23-CR-24
                                              (KLEEH)
NATASHA NICOLE NEWBERRY,

          Defendant.
```

### MEMORANDUM OPINION FOLLOWING BENCH TRIAL

This case came on for trial before the Court on November 3, 2023, following the defendant Natasha Nicole Newberry's ("Newberry" or "Defendant"), execution of a knowing and voluntary waiver of her constitutional right to a trial by jury. At the conclusion of the bench trial, the Court stated that, in accordance with Rule 23 of the Federal Rules of Criminal Procedure, it would issue a written memorandum opinion containing its findings of fact and outlining its reasoning for the disposition of this case. Accordingly, for the following reasons, the Court **FINDS** Newberry **GUILTY** of attempt to obtain a prohibited object in violation of Title 18, United States Code, Section 1791(a)(2).

### I.   ALLEGATIONS OF THE INFORMATION

Count One of the Information [ECF No. 6] charges Newberry with attempt to obtain a prohibited object, specifically narcotics. Count One alleges that on or about January 4, 2023, Newberry "an inmate in the custody of the Bureau of Prisons at the

**MEMORANDUM OPINION FOLLOWING BENCH TRIAL**

Federal Correctional Complex Hazelton, attempted to obtain a prohibited object, that is, buprenorphine/naloxone, also known as Suboxone, a schedule III narcotic controlled substance, without the knowledge and consent of the warden of said facility." ECF No. 6. This opinion discusses the applicable law and evidence introduced at trial with respect to Count One of the Information.

## II.  FACTUAL FINDINGS

At the bench trial, the Government's case consisted of testimony by Special Investigative Services ("SIS") Technicians Zachary Dillow and William Woody, and three exhibits – (1) a letter attributed to Newberry which was intercepted by SIS on January 4, 2023; (2) a copy of a letter mailed to the Clerk of this Court attributed to Newberry; and (3) a TRUVIEW record printout reflecting money transferred to Newberry's inmate account. Each exhibit was admitted into evidence without objection from Defendant. The Court **FINDS** the testimony of the Government's witnesses credible and makes the following findings of fact:

1. On January 4, 2023, defendant Newberry was in custody of the Bureau of Prisons at the Federal Correctional Complex Hazelton ("FCC Hazelton").

2. On January 4, 2023, upon reviewing outgoing inmate mail, SIS Technician Dillow reviewed an unsealed handwritten letter addressed to Aaron Gillis, 2117 Glenburn Rd., KPT,

TN 37660, with a return addressee of "N. Newberry 41210509."

3. The handwritten letter read as follows:

Aaron,

Whats up with ya? I hope all is well your way. As for me same ol' same ol' just a different day. It was really good hearing your voice. I hope you had a great Christmas and a Happy New Year. So I really need to talk to you. I want us to go into business together and I know you are very smart and got the bread to get us started. I will never speak on the phones and this the only letter going out. I just need it to happen (1) time a month. I will never say your name none of that. I need strips and K2 spray. The strips I need (20) at a time. 10 in front of the book 10 in back. They go for 500. You make half I make half. You go to the book store and buy a book take it home. Fix it. You get leather back books. In very front is *illegible* is open book you will see where it glued down use knife peel it up. Stick 10 down same in back. Take book back with receipt. Tell them you didn't know it had to be sent from company. Ask them to send it. Your very smart you know how to do it. With the K2 spray you spray all oddpages of book. You get the spray online. It goes for 500 a (10) card. Once a month is all I need. Strips all leather back books. K2 do paperback James Patterson books odd pages. I need help in here. Everyone fades away. Change cashapp every month. When you get a cashapp tell me cashapp person that sent it your *illegible* and name of whoever sent it paid you how much cash was sent. I am clean and clear minded. I just want to make the money and I know we can do this. (1) a month that's it. Don't get greedy is the key. Please lets do this if you not comfortable point me to someone that is. Please. I'm never gonna act like to anyone that have it I'm gonna act like I'm meeting to

>   get it. You know I am a hustler and I got this.
>   I need you please.
>
>   (heart shape) you.
>                    Always,
>                    Natasha(heart shape)

4. The term "strips" in the letter means Suboxone, a Schedule III controlled substance containing Buprenorphine and Naloxone, and K2 is a synthetic drug.

5. Inmates are prohibited from possessing controlled substances in FCC Hazleton and the Warden has never given an inmate permission to possess either K2 or Suboxone within FCC Hazleton — outside of the prison's medically assisted treatment program.

6. Upon discovery of the letter, Defendant was informed of the situation and placed in administrative detention. FCC Hazleton then undertook an investigation during which SIS Technician Woody served as the primary case agent.

7. During the investigation, Woody reviewed Defendant's inmate account and discovered that Aaron Gillis sent fifty dollars to Newberry on January 3, 2023. The name and address associated with the payment matched the information used for the letter.

8. Defendant sent a handwritten letter to the United States District Court's Clerk Office, which was received on March 8, 2023.

9.  Upon completing his investigation of the letter, Woody referred the matter to the United States Attorney's Office and started the internal hearing process for Defendant's rule violation.

10. Upon comparing the handwritings on the two letters, the Court finds that the January 4, 2023 letter and the March 8, 2023 letter were both written by Newberry. See Fed. R. Evid. 901(b)(3).

### III. APPLICABLE LAW

The crime of attempting to obtain a prohibited object in violation of 18 U.S.C. § 1791(a)(2) consists of four elements: (1) that the defendant was an inmate at a federal correction, detention, or penal facility; (2) that the defendant attempted to make or obtain a prohibited object; (3) that the defendant did so without the knowledge and consent of the warden or superintendent of the facility; and (4) that the defendant did so knowingly and intentionally. Eric Wm. Ruschky, *Pattern Jury Instruction for Federal Criminal Cases*, District of South Carolina, Title 18 U.S.C § 1791 (a)(2) (2020 Online Edition). There was little dispute at trial that the first, third, and fourth elements were satisfied. Thus, after considering the evidence adduced at trial, the Court concludes the Government proved beyond a reasonable doubt that Defendant is an inmate in FCC Hazelton; that the Warden has never

given an inmate, including Defendant, permission to possess either K2 or Suboxone within FCC Hazleton; and that Defendant intended to send the letter to Aaron Gillis. Thus, the Government met its burden of proof as to the first, third, and fourth elements.

The second element – whether sending the letter qualifies as a substantial step toward bringing contraband into the prison – required further analysis following briefing from the parties. For the below reasons, the Court finds the Government proved beyond a reasonable doubt that Newberry made a substantial step in furtherance of the attempted crime.

"An attempt to commit a crime . . . punishes conduct that puts in motion events that would, from the defendant's point of view, result in the commission of a crime but for some intervening circumstance." United States v. Pratt, 351 F.3d 131, 135 (4th Cir. 2003). "For purposes of the crime of attempt, a substantial step is a direct act in a course of conduct planned to culminate in commission of a crime that is strongly corroborative of the defendant's criminal purpose." United States v. Engle, 676 F.3d 405, 423 (4th Cir. 2012).

Importantly, "the direct, substantial act toward the commission of a crime need not be the last possible act before its commission. An attempt comprises any substantial act in a progression of conduct that is meant to culminate in the commission

of the crime intended." Pratt, 351 F.3d at 136. "In determining whether a defendant has taken a substantial step, 'the focus is on the actions already taken to complete the underlying crime, not on the acts that remain uncompleted,'" Engle, 676 F.3d at 423 (quoting United States v. Sanchez, 615 F.3d 836, 844 (7th Cir. 2010) (emphasis in original)). Determining whether a defendant's conduct constitutes a substantial step is a fact intensive process. Id.

The Model Penal Code advises that "soliciting an innocent agent to engage in conduct constituting an element of the crime," qualifies as a substantial step. Pratt, 351 F.3d at 136 (quoting Model Penal Code § 5.01(2)). Additionally, "while words and discussions would usually be considered preparations for most crimes, a specific discussion could be so final in nature" as to amount to a substantial step of the crime. Id.; see also United States v. Neal, 78 F.3d 901, 907 (4th Cir. 1996) (finding a discussion leading to an agreement to engage in crack cocaine transactions, along with corroborative evidence, was a substantial step toward the commission of the drug transaction).

Soliciting help to smuggle contraband into a prison has been found to amount to a substantial step. United States v. Raygosa-Esparza, 111 F. App'x 902 (9th Cir. 2004). In Raygosa-Esparza, the Ninth Circuit affirmed a district court's finding that the evidence supported the substantial step element for the crime of attempt

when the Defendant sought out another person, offered to pay him in exchange for smuggling a specific variety of drugs into the prison, questioned the individual about his timetable for completing the transaction, and whether the accomplice was still willing to go through with the scheme. Id. at 904. The Ninth Circuit found that a rational jury could have found Raygosa-Esparza guilty, beyond a reasonable doubt, of attempt to obtain contraband in prison.

Here, the Government has proven beyond a reasonable doubt that Newberry took a substantial step toward bringing contraband into the prison. While Defendant characterized the subject letter as a "brief, handwritten note", the reality is that the letter contained a substantial amount of information and thoroughly laid out Defendant's plan for smuggling K2 and Suboxone into FCC Hazelton. Like the Defendant in Raygosa-Esparza, Newberry's efforts in soliciting assistance and formulating the smuggling scheme amounts to attempt.

First, Defendant stated that the letter would be the only communication she sent to Gillis, indicating that she believed she provided all the necessary information from her perspective to pull off the scheme. Second, Defendant included several details on how the scheme would operate including the frequency of deliveries, the types of contraband to be smuggled into the prison, and the

USA V. NEWBERRY                                                              1:23-CR-24

**MEMORANDUM OPINION FOLLOWING BENCH TRIAL**

specific size of the orders. Third, Defendant's letter included instructions for both hiding the K2 and Suboxone within certain types of books and described the process for having the books delivered to FCC Hazelton through authorized book retailers. Fourth, Defendant already determined the sales cost for the drugs, the division of profits, and the method for payment. Furthermore, a means for transmitting payment to Defendant already existed because Gillis previously sent her money through her inmate account. And fifth, Defendant made her mindset known in the letter; she was "clean and clear minded" and intended to proceed with bringing drugs into FCC Hazelton.

Defendant argued the letter did not amount to a substantial step because it was a mere proposal and that she did not know if Gillis would agree to participate in the scheme. However, in addition to the above points, the letter requested that Gillis point Newberry to someone else if he was not interested. Thus, the Defendant's letter makes clear that she intended to proceed with the scheme, regardless of Gillis's specific assistance. From Defendant's perspective, her role in initiating the scheme was complete and would have been put into motion but for her letter's interception. Thus, the Government met its burden as to the substantial step element and the Court **FINDS** beyond a reasonable

doubt that Defendant is **GUILTY** of the offense charged in Count One of the Information.

## IV. CONCLUSION

Based on the evidence produced and witnesses proffered, the Court **FINDS** the Government's witnesses were credible, and that such minor inconsistencies in their testimony as may exist are immaterial to its determination. Through all the evidence it produced at trial, the Government proved beyond a reasonable doubt that Newberry committed the conduct set forth in Count One of the Information. Therefore, the Government has met its burden of proof with respect to Count One, and the Court finds Newberry guilty beyond a reasonable doubt of attempt to obtain a prohibited object. A separate judgment order will be entered today implementing this decision.

The Clerk is directed to send a certified copy of this Order to counsel of record, the defendant, and all appropriate government agencies.

DATED: February 1, 2024

*Tom S Kleeh*
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA